FILED
COURT OF APPEALS
DIVISION II

2013 JUN 12 AM 11: 09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42260-3-II |
| Respondent, | |
| v. | |
| JARROD A. AIRINGTON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — A jury convicted Jarrod Airington of unlawful possession of a

firearm after sheriff's deputies seized a sawed-off shotgun from his residence pursuant to a

warrant-based search. Airington appeals, arguing that the trial court erred in denying his

suppression motion and that his counsel was ineffective for not raising particular theories in

support of suppression. He primarily argues that the search warrant was overbroad. Because the

trial court correctly denied Airington's motion to suppress and trial counsel was not ineffective

for not raising other possible arguments in support of suppression, we affirm.

FACTS

A jury found Airington guilty of unlawful possession of a firearm. The charge was based on a shotgun that police discovered in Airington's residence after a warrant-based search. The search warrant was based on evidence that the police saw when they entered Airington's residence to arrest him on an outstanding bench warrant purportedly issued for failure to appear for a DNA (deoxyribonucleic acid) test.

The police obtained the search warrant based on the affidavit of Deputy Kevin Schrader. According to Deputy Schrader's affidavit, deputies learned that a suspect in a recent vehicle theft, Ricky Tatro, might be staying at Airington's residence. A warrant check revealed that both Airington and Tatro had outstanding arrest warrants. Because both Airington and Tatro had a history of violent crime and were known to carry firearms, four officers went with Deputy Schrader to arrest Airington and Tatro.

On arriving at Airington's residence, Deputy Schrader noticed a shotgun shell near the front porch, as well as four pairs of men's shoes on the porch that led him to believe that multiple people were inside. Deputy Schrader knocked and "announc[ed the deputies'] presence" but received no answer. Suppl. Clerk's Papers (CP) at 46. After forcing the door, the deputies discovered Airington inside, along with two unidentified women. Deputy Schrader secured Airington in handcuffs.

During a protective sweep of the premises, Deputy Schrader noticed, in the living room, a glass smoking device which contained a burnt residue. He also noticed several used hypodermic needles and a razor blade on a mirror. According to Deputy Schrader's training and experience,

2

such items are commonly used to prepare illegal narcotics. Deputy Schrader additionally saw photographs of Airington holding what appeared to be pistols. Another deputy on the scene, Sergeant Johansson, saw a sawed-off shotgun in a bedroom closet.

Based on the foregoing information, Deputy Schrader requested a warrant to search Airington's residence for (1) "narcotics, and the vessels used to contain them; (2) [d]rug paraphernalia used to ingest, package, or weigh illegal narcotics . . . ; (3) any and all firearms . . . ; (4) any or all indicia that identifies the person or persons having domain or control over the residence." Suppl. CP at 47.

The trial court issued a warrant for Airington's residence, authorizing the police to seize

[(1)] Narcotics, and drug paraphernalia used to ingest, package, or weigh illegal narcotics.
[(2)] [A]ny and all firearms and weapons.
[(3) [I]ndicia of domain or control over the [residence], and the following: [M]oneys; bank records and bank statements; video tapes and still photographs; personal computers together with peripheral devices attached thereto and records contained on electronic storage media (floppy disks, tape drives, compact disks, etc.); letters and crib sheets; and weapons.

Suppl. CP at 49-50.

Based on the search warrant, the police seized, among other things, the sawed-off shotgun and the photographs they had observed. The State charged Airington with unlawful possession of a firearm and possession of an unlawful firearm.

Pretrial, Airington brought a CrR 3.6 motion to suppress the evidence seized pursuant to the search warrant, which the trial court denied, entering findings of fact and conclusions of law. At trial, the State offered and the trial court admitted the shotgun found in Airington's bedroom. The State also admitted shotgun shells seized from Airington's residence and photographs of

3

Airington holding pistols. After a jury trial, the jury found Airington guilty of unlawful possession of a firearm, but not guilty of possession of an unlawful firearm. Airington appeals.

## ANALYSIS

### I. ISSUE PRESERVATION

In his pretrial motion to suppress, Airington made four basic arguments: (1) officers violated the knock and announce requirements when executing the arrest warrant at his home; (2) the execution of the arrest warrant was pretextual; (3) officers illegally searched his residence after arresting him, rather than leaving promptly; and (4) the search warrant that was later obtained and executed on his residence was invalid for lack of probable cause. The trial court rejected these arguments.

On appeal, Airington again raises the issues of pretext. Otherwise, he raises new arguments in support of suppression that were not made to the trial court. These arguments include (1) that the arrest warrant was invalid, (2) that the forcible entry by the officers in executing the arrest warrant was unreasonable, (3) that the affidavit submitted in support of search warrant obtained afterward was insufficient because it did not show full compliance with knock and announce requirements, and (4) that the search warrant was overbroad. Arguments or theories not presented to the trial court will generally not be considered on appeal. RAP 2.5(a); *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 290, 840 P.2d 860 (1992).

No. 42260-3-II

Airington does not contend that any of the exceptions listed in RAP 2.5(a) apply. Rather, he asks that if this court concludes the issues are not preserved, that they be examined as ineffective assistance of counsel claims. Excluding the issue of pretext, we conclude that these issues are not preserved and address them through the lens of ineffective assistance of counsel.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To show ineffective assistance of counsel, Airington must establish that (1) defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is a strong presumption that defense counsel's conduct was not deficient. *Reichenbach*, 153 Wn.2d at 130. We consider counsel's representation in light of the entire record and presume that it is within the broad range of reasonable professional assistance. *State v. G.M.V.*, 135 Wn. App. 366, 371, 144 P.3d 358 (2006). This presumption is rebutted where there is no conceivable legitimate tactic explaining counsel's performance. *Reichenbach*, 153 Wn.2d at 130.

Failing to bring a motion to suppress evidence can constitute ineffective assistance. *Reichenbach*, 153 Wn.2d at 137. But counsel may legitimately decline to move for suppression on a particular ground if the motion is unfounded. *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007). There is no ineffectiveness of counsel if a challenge to admissibility of evidence would have failed. *Nichols*, 161 Wn.2d at 14-15.

5

A.    *Validity of Arrest Warrant*

Airington claims that the arrest warrant was invalid on its face. Airington did not make this claim below. In fact, Airington's trial attorney stated that the police had a valid arrest warrant. Because a challenge to the arrest warrant would have likely failed, we reject Airington's ineffective assistance claim as to this issue.

Airington was arrested on a bench warrant for failure to appear to give a DNA sample in conjunction with a prior fourth degree assault conviction. Airington argues the arrest warrant was invalid because the trial court had no authority to order him to appear to give a DNA sample and thus no authority to issue an arrest warrant for his failure to do so.[1] Airington is correct that Washington law does not authorize the collection of a DNA sample from one convicted of fourth degree assault without sexual motivation. RCW 43.43.754(1)(a). But the record reflects that, as part of his sentence on the fourth degree assault charge, Airington was required to appear every two weeks for review hearings. The bench warrant was issued on the date of a scheduled review hearing for which he did not appear. Thus, the record shows that the bench warrant was validly issued for Airington's failure to appear, but stated failure to provide a DNA sample as an incorrect reason for the requirement that he appear.

An invalid bench warrant cannot be the basis for a valid arrest. *State v. Trenidad*, 23 Wn. App. 418, 420, 595 P.2d 957 (1979). But Airington provides no authority as to what renders a

---

[1] Airington assigns error to the trial court's finding of fact 1 on his motion to suppress, wherein the trial court stated the legal conclusion that there was a valid warrant for Airington's arrest. We review conclusions of law mislabeled as findings of fact de novo. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

bench warrant invalid[2] and we do not consider his argument on this point. *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) ("court will not review issues for which inadequate argument has briefed or only passing treatment has been made."). Airington does not meet his burden to show prejudice and we accordingly reject his ineffective assistance of counsel claim on this point.

B.     *Reasonableness of the Forcible Entry*

Airington argues that the forcible entry into his residence was unreasonable in violation of the Fourth Amendment and article I, section 7, and thus the information gained from the intrusion could not be used to support the subsequent search warrant. We disagree. Accordingly, Airington fails to show he was prejudiced from his trial counsel not making this argument.

Our Supreme Court has noted that forcible entry into a residence pursuant to an arrest warrant could be unreasonable under certain circumstances. *State v. Hatchie*, 161 Wn.2d 390, 402 n.8, 166 P.3d 698 (2007). The court opined that it "might" be unreasonable for the police to forcibly enter a residence in the middle of the night to execute a misdemeanor traffic warrant, for instance. *Hatchie*, 161 Wn.2d at 402 n.8.

This case is factually distinguishable from *Hatchie*. Here, the police had information that other men with outstanding arrest warrants might be at Airington's residence. Deputy Schrader was aware that all of these men had histories of violence. Deputy Schrader was also aware that Airington had prior convictions for unlawful possession of a firearm. The deputies went to

---

[2] Nor are we independently aware of any authority that would render this arrest warrant invalid.

Airington's residence during daylight.[3] The deputies also saw several knives and a shotgun shell outside the residence. After knocking, announcing their presence and purpose, and attempting to open the door with two different keys from the landlord, the deputies finally forced the door and entered. Any argument by trial counsel that the officer's forcible entry was unreasonable would have likely not been successful. Thus, counsel was not ineffective for failure to make this argument.

C.    *Sufficiency of Affidavit*

Airington argues that the search of his residence was unlawful because the affidavit supporting the search warrant shows that the police did not comply with Washington's "knock and announce" rule when they served the arrest warrant on Airington. Br. of Appellant at 13-15. He contends that the issuing judge should have realized the affidavit revealed a failure to follow the knock and announce requirements and excised any knowledge gained following entry into the house. This precise issue was not argued below. Rather, trial counsel simply argued that the knock and announce rule was not complied with. We conclude that trial counsel was not ineffective for not making this argument.

Under RCW 10.31.040, a police officer may forcibly enter a building in order to make an arrest "if, after notice of his or her office and purpose, he or she be refused admittance." Here, Deputy Schrader's affidavit stated that he announced his presence, but it did not state whether he announced his purpose. However, at Airington's CrR 3.6 suppression hearing, Deputy Schrader

---

[3] The record does not reflect precisely when the deputies served the warrant. But the police report states that the deputies returned to search the residence at 4:00 PM that same day, showing that the deputies arrested Airington during the day.

8

testified that he also announced his purpose, which was to serve an arrest warrant. In finding of fact 4 on the motion to suppress, the trial court found that Deputy Schrader announced both his presence and his purpose.

Airington assigns error to finding of fact 4, arguing that this finding was erroneous because it was not supported by the information within "the four corners of the affidavit." Br. of Appellant at 15. But Deputy Schrader's omission of the fact that he announced his purpose is insufficient to invalidate the warrant. Washington courts view an affidavit supporting a search warrant in a commonsense manner, not hypertechnically. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). And doubts are resolved in favor of the warrant's validity. *Chenoweth*, 160 Wn.2d at 477. Airington invites us to engage in a hypertechnical reading of the affidavit here. We decline to do so. Under a commonsense reading of the warrant, Deputy Schrader's omission on this point does not negate the trial court's finding of probable cause to issue the search warrant. Moreover, Airington cites no authority for the proposition that the search warrant affidavit must affirmatively reflect compliance with knock and announce requirements. We reject Airington's claim on this point.

D.    *Validity of Search Warrant and Overbreadth*

Below, Airington's trial counsel argued that there was not probable cause to issue the search warrant for the house because the information recited in the warrant was obtained illegally. He specifically contended that officers should have immediately left after arresting Airington and that afterward they illegally looked in his bedroom, where they found a shotgun. Absent this evidence, counsel contended there was no probable cause to obtain the search

warrant. Airington does not make this argument on appeal; rather, he now argues counsel should have challenged the warrant on overbreadth grounds. Because Airington cannot show that he was prejudiced by admission of the photographs, and a motion on overbreadth grounds would not likely have been successful, Airington's claims fail.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, warrants shall issue only on probable cause. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). The warrant must be supported by an affidavit that particularly identifies the items to be seized. *Lyons*, 174 Wn.2d at 359. A warrant can be overbroad either because it fails to describe with particularity items for which probable cause exists or because it describes items for which probable cause does not exist. *State v. Temple*, 170 Wn. App. 156, 162, 285 P.3d 149 (2012). The description of items to be seized must be "as specific as the circumstances and the nature of the activity under investigation permits." *State v. Perrone*, 119 Wn.2d 538, 547, 834 P.2d 611 (1992). A generic term or general description of an item is usually permissible only where a more particular description is not available when the warrant is issued. *Perrone*, 119 Wn.2d at 547.

The search warrant authorized officers to seize narcotics, drug paraphernalia, firearms, weapons, moneys, bank records, video tapes, photographs, personal computers, electronic storage media, letters, and crib sheets. Excluding the categories of firearms and drug paraphernalia, there was likely not probable cause to authorize a search for the other items. Furthermore, some of the recited items, such as "photographs," are described too generically and thus fail the particularity test.

Nonetheless, had counsel moved for suppression on overbreadth grounds, suppression of all of the evidence, most importantly the shotgun, would have not been required under the severability doctrine. Under the severability doctrine, evidence seized under any invalid portions of a warrant may be suppressed, but evidence seized under any valid portions need not be. *Perrone*, 119 Wn.2d at 556. Here, there was probable cause to search for firearms and drug paraphernalia. During the execution of the arrest warrant, officers saw in plain view shotgun shells, photographs of Airington holding handguns, and a shotgun. They also saw in plain view a glass smoking device, used hypodermic needles, and a razor blade on a mirror. While ideally the warrant should have particularly described the shotgun, given the other evidence of other firearms, the description of "firearms" was sufficiently particular. Viewed in the totality, the warrant's grant of authority to search for firearms and drug paraphernalia is significant. We conclude that the severability doctrine would have applied and that the shotgun, on which Airington's conviction for unlawful possession of firearm rested, would have not been suppressed. As to the photographs of Airington holding pistols, this evidence would likely not have been saved by the severability doctrine. But with the shotgun in evidence, the jury would have still reached the same result. Airington cannot show he was prejudiced. Therefore, Airington's ineffective assistance claim based on failure to raise this claim also fails.

### III. PRETEXT

Airington assigns error to the trial court's findings of fact 2 and 9 on his motion to suppress, which address whether the entry into his residence was merely a pretext to search for Tatro. He argues that the entry was pretextual and thus unconstitutional. But he provides no

argument relevant to finding of fact 2, and thus we do not consider this assignment of error. *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003). And finding of fact 9 is supported by substantial evidence.

We review a trial court's findings of fact entered pursuant to a CrR 3.6 motion to suppress for substantial evidence, and for whether the findings of fact support the conclusions of law. *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Substantial evidence is evidence sufficient to convince a fair-minded person that a finding is true. *State v. Hardgrove*, 154 Wn. App. 182, 185, 225 P.3d 357 (2010). We defer to the trier of fact on issues of "conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *Thomas*, 150 Wn.2d at 874-75.

In finding of fact 9, the trial court found that the deputies had information that "Ricky Tatro and others" may have been in the residence. CP at 6. The trial court found that the information that the others might be present "gave the officers a heightened concern for their safety, regardless of whether they may also of [sic] had warrants for their arrest."[4] CP at 6. Airington challenges this finding of fact because the only information that the deputies had regarding the presence of others in Airington's apartment was a tip from a confidential informant whose identity the State refused to disclose. Airington is incorrect on this point.

---

[4] The trial court also stated the legal conclusion in finding of fact 9 that Airington's arrest was not a pretext to search for the others that the deputies believed would be at his residence. This mislabeled conclusion of law is reviewed de novo in the following subsection of this analysis. *Willener*, 107 Wn.2d at 394.

Airington's landlord told the deputies that a car matching the one Tatro had stolen went to Airington's residence. And the deputies saw four pairs of men's shoes on the porch, indicating other men may have been present. Moreover, the deputies saw a shotgun shell and knives outside, suggesting that the occupants of the residence could have been armed. There was uncontroverted evidence that the deputies had information that Tatro and others were at Airington's residence, and that the deputies had a heightened concern for their safety. Airington's challenge to this finding of fact is accordingly without merit.

Airington specifically argues that the initial entry into his residence was unlawfully pretextual under the facts here and that the police officers were, in reality, searching for Tatro. We disagree.

Airington cites *Hatchie*, for the proposition that police cannot use an arrest warrant as a pretext for conducting a search. 161 Wn.2d at 402. But the record does not show that the police executed the warrant on Airington solely because they wished to conduct a search for Tatro. Rather, they intended to arrest Airington and any other occupants of the residence for whom there was an arrest warrant.

Airington also cites *State v. Ladson*, 138 Wn.2d 343, 353, 979 P.2d 833 (1999), for the proposition that article I, section 7 forbids use of pretext as a justification for a search or seizure. But *Ladson* addressed pretextual traffic stops, holding that a stop for a traffic offense may not be used as a pretext to investigate another crime. *Ladson*, 138 Wn.2d at 352-53, 360. This holding does not apply here, where the deputies served the arrest warrant in order to make an arrest, not as a pretext to investigate another crime.

Moreover, the Supreme Court has recently held that a "mixed-motive traffic stop is not pretextual so long as the desire to address a suspected traffic infraction (or criminal activity) for which the officer has a reasonable articulable suspicion is an actual, conscious, and independent cause of the traffic stop." *State v. Arreola*, 176 Wn.2d 284, 288, 290 P.3d 983 (2012). Analogously, a mixed-motive execution of an arrest warrant is not pretextual if the desire to arrest the person named in the warrant is independently motivated. Here, even assuming the officers were partially motivated to execute Airington's arrest warrant because they wanted to find Tatro, this does not make the execution of the warrant unconstitutionally pretextual because the officers were also independently motivated to arrest Arrington.

We conclude that the execution of Airington's arrest warrant was not pretextual.

## STATEMENT OF ADDITIONAL GROUNDS

Airington states in his SAG that the officers exceeded the scope of the protective sweep of his residence because one officer gave the "all clear" before continuing to search and looking inside a closet, where he discovered the sawed-off shotgun. When executing a lawful arrest, police may conduct a protective sweep of the premises. *State v. Hopkins*, 113 Wn. App. 954, 959, 55 P.3d 691 (2002). Such a sweep is limited to a visual inspection of places where a person could be hiding. *Hopkins*, 113 Wn. App. at 959. A sweep of the areas immediately adjoining where the arrest takes place is permitted without further justification beyond the arrest itself. *Hopkins*, 113 Wn. App. at 959. Here, the officers searched only the areas immediately adjoining the place where Airington was arrested, making the protective sweep valid. After Airington and two women came out of the bedroom and surrendered, officers briefly searched the bedroom,

14

No. 42260-3-II

including a closet. This was reasonable and in furtherance of officer safety because another person may have been hiding in the room. Neither is there any rule that a protective sweep must end if an officer gives the "all clear." And in any event, the record reflects that Sergeant Johansson did not give any kind of "all clear" signal before opening the closet and discovering the shotgun. Airington's claim on this point accordingly lacks merit.

Airington also asserts that the bench warrant for his arrest was invalid because he was not subject to further jail time for his fourth degree assault conviction. Airington says this issue was addressed by the trial court at a hearing on April 27, 2011, but we have no record of it. Thus we are unable to determine whether Airington preserved this issue for appeal in accordance with RAP 2.5(a). Further, Airington has not adequately informed us of the nature and occurrence of the alleged error and we accordingly do not address it. RAP 10.10(c).

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Bjorgen, J.

15